

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DUANE WASSON et al., ) | |
| Plaintiffs, ) | |
| vs. ) | 3:10-cv-00123-RCJ-RAM |
| PYRAMID LAKE PAIUTE TRIBE et al., ) | ORDER |
| Defendants. ) | |

Plaintiffs have sued the Pyramid Lake Paiute Tribe ("the Tribe"), several tribal officials, several employees of the U.S. Bureau of Indian Affairs ("BIA"), and a tribal consultant residing in Colorado for declaratory and injunctive relief. Pending before the Court is the Tribe's motion to dismiss and three motions to amend the Complaint. For the reasons given herein, the Court grants the motion to dismiss and denies the motions to amend.

I.     **FACTS AND PROCEDURAL HISTORY**

In the Complaint, Plaintiffs characterize the nature of the case as follows:

> The Pyramid Lake Tribal Council under past and current three Tribal Administrators violate the requirements of due process rights and equal protection under the law which are guaranteed under The Indian Civil Rights Act of 1968; The Constitution and Bylaws of the Pyramid Lake Paiute Tribe, approved in 1936; Pyramid Lake Tribal Code, Title 9, Election Code (resolution # PL91-00); Code of Federal Regulations 25 Indians. The Council continually violates Petition(s) and Election Referendum votes, by doing so the subject matter of the petitions are ignored or never addressed. For this reason we must bring forward the subject matter contained in the three petitions and due process violations.

(Compl. 5 ¶ B.1, ECF No. 4). The Complaint is 242 pages long. Count 1 for violation of due process rights under the Indian Civil Rights Act of 1968 ("ICRA") is listed on page six (as numbered in the ECF filing). Count 1 is immediately followed by approximately 115 pages of various evidence not independently marked as exhibits, after which the Complaint continues with Count 2 for violation of due process rights under the Constitution of the Pyramid Lake Paiute Tribe. (*See id.*, ECF No. 4-1, at 11). This is followed by approximately 100 more pages of evidence before the Complaint resumes and concludes. (*See id.*, ECF No. 4-2, at 36). Plaintiffs allege to have exhausted administrative, tribal court, and tribal appellate court remedies. (*See id.* at 37 ¶ 3).

The Court has denied a temporary restraining order ("TRO"). At the TRO hearing, the Court strongly advised Plaintiffs to retain an attorney. They have not done so, despite claiming at oral argument that they had contacted an attorney who would represent them in opposing the present motion to dismiss. What Plaintiffs have done is file a "Motion to Recognition of Attorney Representation," wherein Plaintiffs ask the Court to recognize Mr. Wes Williams as their attorney. Mr. Williams is not Plaintiffs' attorney and could not be under the ethical rules. He is an attorney for the Tribe and other Defendants. Plaintiffs cite to 25 C.F.R. § 88.1(a) for the proposition that Mr. Williams is their attorney, but that section of the regulation simply states that federally recognized tribes "may employ legal counsel." *Id.* Mr. Williams has appeared on behalf of the Tribe and represents it as a sovereign entity, not Plaintiffs in their individual capacities.

II.  **LEGAL STANDARDS**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly v. Bell Atl. Corp.*, 550 U.S. 554, 555 (2007)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d);

1  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

## III. ANALYSIS

Congress has plenary power over the Indian tribes, *see, e.g., Lone Wolf v. Hitchcock*, 187 U.S. 553, 565 (1903), which exist as "domestic dependent nations," *Cherokee Nation v. Georgia*, 30 U.S. 1, 17 (1831). As a starting point in American history, Indian tribes existed as sovereign nations. *Id.* at 59–60. However, the tribes' sovereignty has been "necessarily diminished" via conquest by other sovereigns, such as England, France, Holland, Spain, and Portugal, all of whom recognized the principal that a conquered people retained the right to occupy the land, but that certain aspects of sovereignty became forfeit. *Johnson v. McIntosh*, 21 U.S. 543, 574–76 (1823). Congressionally recognized tribes retain all aspects of sovereignty they enjoyed as independent nations before they were conquered, with three exceptions: (1) they may not engage in foreign commerce or foreign relations, *see Worcester v. Georgia*, 31 U.S. 515, 559 (1832); (2) they may not alienate fee simple title to tribal land without the permission of Congress, *see McIntosh*, 21 U.S. at 574; and (3) Congress may strip a tribe of any other aspect of sovereignty at its pleasure, *see Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 208 (1978), *superseded on other grounds by* 25 U.S.C. § 1301(2), (4) (1990). In summary, all aspects of sovereignty consistent with the tribes' dependent status, and which have not been taken away by Congress, remain with the tribes.

Because the tribes retain their sovereignty generally, and because this sovereignty predates the Constitution and does not depend upon it, the Constitution does not bind tribal governments with respect to their members. *Talton v. Mayes*, 163 U.S. 376, 382–84 (1896). Plaintiffs' claims against the tribal Defendants under the United States Constitution therefore fail as a matter of law. In 1968, Congress passed the ICRA to provide certain protections for Indians as against their tribal governments. These protections roughly parallel the protections afforded by the Bill of Rights, but the only remedy available is habeas corpus, not injunctive or

1  declaratory relief. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58–62 (1978) (holding that the
2  ICRA stripped sovereign immunity only as to the rights enumerated therein, and only with
3  respect to the remedy of habeas corpus, not injunctive or declaratory relief). Plaintiffs' claims
4  against the tribal Defendants under the ICRA therefore also fail as a matter of law.

5      Finally, the BIA officials and the private tribal consultant may not be sued in this Court
6  based on the facts alleged. The Complaint asks Plaintiffs to "[e]xplain how [the BIA officials
7  and the private tribal consultant were] acting under color of law," to which Plaintiffs respond
8  "Tribal and Federal Law" and "Under Tribal Laws approved by the Dept of the Interior,"
9  respectively. (Compl. 3–4). Insofar as these Defendants were acting on behalf of the Tribe, they
10 are immune, and the simple fact that the BIA approved the Tribe's constitution and/or bylaws
11 does not make the BIA itself, or its officials, amenable to suit as to the Tribe's allegedly
12 unconstitutional actions thereunder. Under § 16 of the Indian Reorganization Act of 1934
13 ("IRA"), an Indian tribe may adopt a constitution and bylaws, which become effective upon
14 ratification by a majority of adult members of the tribe and approval by the Secretary of the
15 Interior. *See* 25 U.S.C. § 476(a). A federal court, however, does not have subject matter
16 jurisdiction under either the IRA or the Administrative Procedures Act to entertain a suit against
17 any defendant, Indian tribe or no, based on the alleged violation of tribal election procedures,
18 which is "an internal controversy among Indians over tribal government." *Motah v. United*
19 *States*, 402 F.2d 1, 2 (10th Cir. 1968). Nor is there any exception to federal sovereign immunity
20 from suit that would permit such a suit against BIA officials. *Motah*, 402 F.2d at 2 (citing *United*
21 *States v. Sherwood*, 312 U.S. 584, 586 (1941)).

22     Plaintiffs here complain of the alleged failure of the Tribe to entertain petitions or honor
23 referenda results. These are internal affairs of the Tribe over which the Court lacks subject
24 matter jurisdiction. *See* Felix. S. Cohen, *Federal Handbook of Indian Law* 126 (1971) ("Such
25 power [of sovereignty] includes the right to define the powers and duties of [tribal] officials, the

manner of their appointment or election, the manner of their removal, the rules they are to observe in their capacity as officials, and the forms and procedures which are to attest to the authoritative character of acts done in the name of the tribe."). A tribe may not be sued except where Congress has specifically stripped its sovereign immunity by providing for suit. *See id.* at 283–84 (quoting *Thebo v. Choctaw Tribe of Indians*, 66 F. 372, 373–76 (8th Cir. 1895)); *see also Turner v. United States*, 248 U.S. 354, 358 (1919) ("Without authorization from Congress, the Nation could not then have been sued in any court; at least without its consent."). Plaintiffs identify no statute permitting suit here except for the ICRA, the sole remedy under which is habeas corpus. Nor do Plaintiffs identify any waiver of sovereign immunity in the Tribal Constitution, which they attach to the Complaint. (*See* Constitution and Bylaws of the Pyramid Lake Paiute Tribe, Jan. 15, 1936, ECF No. 1-1, at 14). Neither the Tribal Constitution nor the Amendments thereto appear to waive sovereign immunity from suit. *See id.* In fact, the Election Code, which is also attached to the Complaint, indicates an intention not to waive immunity from suit as to election disputes. (*See* Pyramid Lake Tribal Code § 9.03.110, ECF No. 1-1, at 43 ("Appeals shall be heard by the Pyramid Lake Tribal Council at the next Regular or Special Tribal Council meeting and the decision of the Council shall be final.")).

      The Court identified most of the above obstacles to jurisdiction in the order denying the TRO motion. Defendants now add that because the Tribe is immune and therefore cannot be joined involuntarily, and because the Tribe is a necessary, indispensable party under Rule 19, the entire case must be dismissed under Rule 12(b)(7). Defendants are correct. *See Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022–25 (9th Cir. 2002). A tribe's interest in sovereign immunity so greatly outweighs a plaintiff's interest in litigating his claims that there is "very little room for balancing of other factors" under Rule 19(b) in such cases. *Id.* at 1025.

      Plaintiffs also complain that the Tribe is not adequately protecting their interests in water rights. At the TRO hearing, the Court asked whether there were any federal statute or regulation

requiring, for example, per capita distributions of proceeds from the sale or lease of tribal water rights, positing that the Court might have jurisdiction to enforce a claim under such a law, but Plaintiffs identified no such law or regulation in their opposition or at oral argument. At oral argument, Plaintiffs complained that the Tribe operated as a dictatorship and that the Tribal Court was not independent from the Tribal Counsel. These may be serious political concerns, but an allegation does not create jurisdiction by its gravity where the nature of the allegation precludes it. If Plaintiffs wish to strip the Tribe of its immunity so that they may sue it, they must pursue that course of action politically with the Tribe itself or with Congress.

Finally, Plaintiffs move to amend, but amendment in the way Plaintiffs request is futile. They request the addition of criminal charges, which they may not privately prosecute, and to add Plaintiffs.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 22) is GRANTED.

IT IS FURTHER ORDERED that the Motions to Amend (ECF Nos. 14, 16, 24) are DENIED.

IT IS FURTHER ORDERED that all other pending motions are DENIED as moot.

IT IS SO ORDERED.

Dated this 25th day of February, 2011.

_____
ROBERT C. JONES
United States District Judge